ANDRE' M. LETEVE # 277278
Name and Prisoner/Booking Number

ASPC TUCSON / RINCON UNIT  11-C-11  C61
Place of Confinement

P.O. BOX 24403   11-C-11
Mailing Address

TUCSON  ARIZONA  85374-4403
City, State, Zip Code

**(Failure to notify the Court of your change of address may result in dismissal of this action.)**

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA

ANDRE' MICHAEL LETEVE' ,
(Full Name of Plaintiff)

Plaintiff,

v.

(1) RYAN THORNELL (DIRECTOR) ,
(Full Name of Defendant)

(2) WARDEN J. MARTINEZ ,

(3) D.WARDEN D. MENDOZA ,

(4) SGT. MARIO TUCCINO ,

IN THEIR        Defendant(s).
OFFICIAL AND INDIVIDUAL CAPACITY.

☐ Check if there are additional Defendants and attach page 1-A listing them.

CASE NO. # 4:25-CV-00622-JGZ-PSOT
(To be supplied by the Clerk)

## CIVIL RIGHTS COMPLAINT
## BY A PRISONER

☒ Original Complaint
☐ First Amended Complaint
☐ Second Amended Complaint

## A.  JURISDICTION

1.   This Court has jurisdiction over this action pursuant to:
☒ 28 U.S.C. § 1343(a); 42 U.S.C. § 1983
☐ 28 U.S.C. § 1331; *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971).
☐ Other: _____.

2.   Institution/city where violation occurred: RINCON UNIT (2) DEATH ROW, TUCSON ARIZONA

**550/555**

2 OF 21
1 OF 144

## B. DEFENDANTS

1.  Name of first Defendant: _RYAN THORNELL_ . The first Defendant is employed
as: _DIRECTOR OF ARIZONA DEPARTMENT OF CORRECTIONS_ ( _ADCRR, PHX. AZ)_ .
     (Position and Title)                                      (Institution)

2.  Name of second Defendant: _JORGE MARTENEZ_ . The second Defendant is employed as:
as: _WARDEN TUCSON COMPLEX_ at _ASPC TUCSON_ .
     (Position and Title)                          (Institution)

3.  Name of third Defendant: _DANNY MENDOZA_ . The third Defendant is employed
as: _DEPUTY WARDEN OF RINCON UNIT_ at _ASPC TUCSON RINCON UNIT._ .
     (Position and Title)                                      (Institution)

4.  Name of fourth Defendant: _MARIO TUCCINO_ . The fourth Defendant is employed
as: _SERGEANT_ at _TUCSON COMPLEX MAIL & PROPERTY_ .
     (Position and Title)                                      (Institution)

**If you name more than four Defendants, answer the questions listed above for each additional Defendant on a separate page.**

## C. PREVIOUS LAWSUITS

1.  Have you filed any other lawsuits while you were a prisoner?    ☐ Yes    ☒ No

2.  If yes, how many lawsuits have you filed? _____. Describe the previous lawsuits:

    a.  First prior lawsuit:
        1.  Parties: _____ v. _____
        2.  Court and case number: _____.
        3.  Result: (Was the case dismissed? Was it appealed? Is it still pending?)_____
            _____.

    b.  Second prior lawsuit:
        1.  Parties: _____ v. _____
        2.  Court and case number: _____.
        3.  Result: (Was the case dismissed? Was it appealed? Is it still pending?)_____
            _____.

    c.  Third prior lawsuit:
        1.  Parties: _____ v. _____
        2.  Court and case number: _____.
        3.  Result: (Was the case dismissed? Was it appealed? Is it still pending?)_____
            _____.

**If you filed more than three lawsuits, answer the questions listed above for each additional lawsuit on a separate page.**

3 OF 21
2 OF 149

## D. CAUSE OF ACTION

### COUNT I

1. State the constitutional or other federal civil right that was violated: <u>DUE PROCESS</u>

2. **Count I.** Identify the issue involved. Check **only one.** State additional issues in separate counts.
   - ☐ Basic necessities
   - ☐ Disciplinary proceedings
   - ☐ Excessive force by an officer
   - ☐ Mail
   - ☐ Property
   - ☐ Threat to safety
   - ☒ Access to the court
   - ☐ Exercise of religion
   - ☐ Other: _____
   - ☐ Medical care
   - ☐ Retaliation

3. **Supporting Facts.** State as briefly as possible the FACTS supporting Count I. Describe exactly what **each Defendant** did or did not do that violated your rights. State the facts clearly in your own words without citing legal authority or arguments.

   SEE ATTACHED PAGES FOR COUNT #1

4. **Injury.** State how you were injured by the actions or inactions of the Defendant(s).

   SEE ATTACHED

5. **Administrative Remedies:**
   a. Are there any administrative remedies (grievance procedures or administrative appeals) available at your institution? ☒ Yes ☐ No
   b. Did you submit a request for administrative relief on Count I? ☒ Yes ☐ No
   c. Did you appeal your request for relief on Count I to the highest level? ☒ Yes ☐ No
   d. If you did not submit or appeal a request for administrative relief at any level, briefly explain why you did not. _____

3

4 of 21
3 of 149

Count #1  AMENDED    2-10-2026

SUPPORTING FACTS

**1.** Plaintiff was sentenced (wrongfully) to death on December 19th 2012, and shortly thereafter transferred to the Arizona Department of Corrections Rehabilitation and Reentry (ADCRR), Eyman Complex, Browning unit. Due to good behavior, in 2017, Plaintiff reclassified to a lower custody status and relocated to Florence Complex, Central unit.

**2.** While at Central unit, Plaintiff had a two volume legal resource book, the Federal Habeas Practice and Procedure (FHPP) purchased and sent to him directly from the publisher Lexis Nexis (see exhibit # 1.A). Florence Complex mailroom processed the books and Central unit Property delivered them to Plaintiff on 3/1/2021 ( see exhibit #1.B)

**3.** Plaintiff started purchasing the annual updates to the FHPP thereafter. In total Plaintiff received 2 annual updates at Rynning unit, Eyman Complex  1/11/2023 and 2/1/2024. Each and every one of the annual updates were sent directly from the publisher Lexis Nexis and processed by ADCRR complex mailroom and unit property which is consistent with ADCRR policy DO. 914. (see exhibit # 2.A ,2B)

**4.** After the move from Eyman Complex to ADCRR Tucson complex, Rincon 2, Petitioner again had the annual FHPP update purchased and sent exactly as the previous orders, with the new mailing address, from the publisher Lexis Nexis. After confirmation of the order, a two-and-a-half-week delay prompted Plaintiff to contact the purchaser (Jeannette Westcott, Plaintiff's mother), who confirmed the order was shipped  2/5/2025 and then signed for by Tucson Complex mail room Sergeant Toccino (Ex # 3 A,B,C, and D).

**5.** Plaintiff never received the book and did not receive any notice of contraband received, nor was Plaintiff given an opportunity to appeal, all in violation of ADCRR policies: 914 2.9. Incoming mail/publication is individually reviewed consistent with the departments legitimate penological interest. Contraband forms, #s 914-6, 909-6 or 909-3 were not filled out and given to Plaintiff in order to give Plaintiff the 90 day period to process out/ appeal / and or destroy the item. ( see Ex #4 DO. 914.2.9)

**5.1** <u>Plaintiff contends that Sergeant Toccino should be held liable in both his individual and official capacity.</u>

3A                                                                5 OF 21

There are two theories under which a State official may be held liable for actions or omissions in his individual capacity: (1) personal involvement in the act or omission which caused the injury, or (2) sufficient causal connection between the officials act or omission and the injury. Plaintiff must show that the official implement[ed] a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of the constitutional violation Redman v. County of San Diego, 942 F.2d 1435, 1446 (9th Cir. 1991). A supervisor may also be held liable for the constitutional violations of subordinates if the supervisor directed the violations, or knew of the violations and failed to act to prevent them. Taylor v. List, 880 F.2d at 1045.

First, Sargent Toccino personally signed for the Federal Habeas Practice and Procedure package (see Ex.3 C  p. 38 of original filing) with the United Parcel Service.

Second, within the second level grievance appeal it states The decision [ by Sgt. Toccino] to reject the package and return to sender is consistent with Department Policy. However Department order 914 (Inmate Mail) states the following

914.9.3.1 "Upon a decision to allow or exclude a publication, complex mail shall promptly provide inmate with notice of result, form 914.6 informing the inmate of the decision and an opportunity to appeal the decision within 30 days of inmates actual receipt of the notice of exclusion."

More importantly Dept.Order 914.9.3.5 states "The decision to allow or exclude a publication by one complex shall be binding on all other complexes." thus creating a precedent.

Both Florence and Eyman complexes have previously approved and delivered the annual updates for the Federal Habeas Practice and Procedure to the plaintiff. (see Ex # 1 A,B and 2 A,B) following the established precedent.

Sergeant Toccino chose to follow Tucson Complexs policies and customs concerning the Department orders and failing to follow Dept.Order 914.9.3.5 above.

"Deprivations of property which have occurred as a result of an affirmatively established or defacto policy, procedure or custom, which the State had the power to control, are actionable under the Due Process Clause." Abbot v. McCotter, 13 F.3d 1439, 1443 (10th Cir.1994) San Bernardino Physicians Service Medical Group, Inc. V. San Bernardino

3B

6 OF 21

County, 825 F.2d 1404, 1410 (9th Cir. 1987)( "where there has been alleged planned, non-random behavior on the part of the state… a section of 1983 case for violations of due process may lie without regard to,or use of, the states postdeprivation remedies.")

Sgt.Toccinos actions, as previously stated show a policy and custom of choosing to follow Department orders that support his personal planned, non-random behavior on the part of the state and NOT to follow Department Orders that favor the inmates rights.

This is not an isolated incident, as two other inmates also had their property summarily denied and supposedly returned to the vendors without notification. Of note, each of their packages arrived at the respective vendors empty, no merchandise contained within.

Plaintiffs injuries, the loss of $281 of gift property, were a direct result of the previously stated actions and customs of Sargent Toccino.

**6.**Further, Sergeant Toccino then refused to fill out the package tracking document for all document/items arriving in the mailroom (Ex. # 4  914.1.3.3) Ostensibly, all of these deviations from policy covered the reality that Plaintiffs property was destroyed. Jeannette Westcott ( purchaser) has been in communication with Lexis Nexis to confirm return of the update materials. As of the date of this filing, the update has not been returned to Lexis Nexis. (See Ex # 5  J. Westcott declaration)

**7.** On March 3rd 2025, Plaintiff initiated the grievance process charging Sergeant Toccino as having violated Plaintiff's due process, access to the courts and right to participate in his capital appeals ( see Ex # 6   A. informal  B. Grievance  C. Appeal (1st), and D. Appeal (2nd) )

**8.** On March 5th 2025, Plaintiff conversed with ADCRR general counsel, Halley Brown in person ( whom did not identify herself as representing counsel for the ADCRR ) who agreed with Plaintiff that Sergeant Toccinos refusing to process the FHPP update interfered with Plaintiffs access to the courts  ( see ex # 7 Letevés declaration ). Halley Brown further stated that it was impossible to create an exhaustive approved vendors list , but that she will add Lexis Nexis to the approved vendors List.

**9.** At each step in the grievance process, the ADCRR denied redress/ resolution. ( See EX #8  ADCRR grievance responses A-D .)

**10.** Due to the rogue actions of then, property officer Sergeant Toccino, Plaintiff incurred the loss of gift property in the amount of $ 281.54  and was denied the ability to participate in his active and ongoing Capital appeals litigation, causing extreme anxiety and stress, insomnia, loss of appetite, and bouts of depression. These violations are supported by:

**11.** Fourth Amendments unreasonable seizures clause : Sergeant Toccino confiscated, UPS mailed property addressed to Plaintiff and destroyed it.

**12.** First, Fifth, and Fourteenth Amendments due process: Plaintiffs' freedom to receive legal materials through the mail services, that do not violate any policy prohibition (Ex #4 914.2.5.1 through 2.5.1.5), violates the First Amendment and the due process clause of the 5th and 14th amendments.

**13.** Sergeant Toccinos combined actions in disregarding policy, failure to provide contraband notice ( Ex #4  914.2.9 form 909-6(e)) deprived plaintiffs right to challenge and appeal the decision to deem contrabanding the law books and failure to create a record to prove that the law books were returned, which creates an inference that the law books ended up in the trash, and supports a willful and deliberate act that violates Plaintiffs Constitutional Rights.

**14.** Sixth Amendment: Plaintiff is currently in postconviction relief (PCR)  where he is not Constitutionally entitled to effective assistance of counsel, however as a Capital defendant, Plaintiff has the right to be able to assist his attorney, and access to the courts, that cannot be chilled and or denied , as it has been by Sergeant Toccino, and by extension ADCRR Director R. Thornell. The Supreme Court of the United States established precedent that squarely places the burden on the defendant (at PCR) to overcome ineffective assistance of counsel (IAC) by ensuring court-appointed counsel present all known claims and legal arguments therein. Failure to do so, and any future IAC found against PCR counsel, will be credited against the defendant (plaintiff).

**15.** Recognizing this precedent, Plaintiff utilized the Federal Habeas Practice and Procedures contents and arguments at PCR by filing pro se motions ( see State v. Letevé , CR 2010- 005965-001  second amended petition.

3D

8 OF 21

**16**. The ADCRR and Sergeant Toccino  prevented Plaintiff from receiving the research book updates necessary to present any further unknown legal arguments to protect the record on appeal. As argued above there was no legitimate penological interest for Sergeant Toccino to refuse to allow the legal research updates. The fact that two different Sergeants at separate ADCRR complex mailrooms and unit property officers, previously processed the same (yet current) legal research updates to the FHPP, to the plaintiff supports the violative actions of Sergeant Toccino.

**17**. Moreover, General counsel admits that Lexis Nexis law material in no way violates any legitimate penological interest and now lists Lexis Nexis as an approved vendor ( Ex # 8 A-D). That fact concedes the violation of plaintiffs due process, unreasonable seizures access to the courts right to participate in his criminal case.

**18**. For these reasons, the court should grant relief

Relief for redress:

A) Reimbursement for the court costs of the destroyed law book updates in the amount of $281.54.

B )Reimbursement for the filing fees and costs of litigation $xxx.

C)Order any other injunctive relief the court finds reasonable and equitable to prevent the ADCRR from repeating similar violations.


I declare under penalty of perjury that the foregoing is true and correct to, the best of my knowledge.


André M. Leteve.            Date.

3 E

9 of 21

## COUNT II

1. State the constitutional or other federal civil right that was violated: *FIRST AMENDMENT RIGHTS*
.

2. **Count II.** Identify the issue involved. Check **only one**. State additional issues in separate counts.
   ☐ Basic necessities      ☒ Mail      ☐ Access to the court      ☐ Medical care
   ☐ Disciplinary proceedings      ☐ Property      ☐ Exercise of religion      ☐ Retaliation
   ☐ Excessive force by an officer      ☐ Threat to safety      ☐ Other: _____.

3. **Supporting Facts.** State as briefly as possible the FACTS supporting Count II. Describe exactly what **each Defendant** did or did not do that violated your rights. State the facts clearly in your own words without citing legal authority or arguments. *SEE ATTACHED PAGES FOR COUNT #2*

4. **Injury.** State how you were injured by the actions or inactions of the Defendant(s).
   *SEE ATTACHED*

5. **Administrative Remedies.**
   a. Are there any administrative remedies (grievance procedures or administrative appeals) available at your institution?      ☒ Yes    ☐ No
   b. Did you submit a request for administrative relief on Count II?      ☒ Yes    ☐ No
   c. Did you appeal your request for relief on Count II to the highest level?      ☒ Yes    ☐ No
   d. If you did not submit or appeal a request for administrative relief at any level, briefly explain why you did not. _____.

4

10 OF 21
8 OF 149

COUNT #2

**19.** Nearly 60 days after arriving at the Tucson Complex, on December 19th 2024 Plaintiff filed two (2) inmate Grievances concerning the delivery of mail and newspapers. On January 2nd 2025 Plaintiff filed yet another Grievance concerning late delivery of mail and newspapers. Each of these informals and grievances centers around the untimely delivery of mail and the Wall Street Journal Newspaper, not in accordance with ADCRR policy. In 10 months time (November 2nd 2024 through August 2025) Plaintiff has received just two timely delivery of the daily paper. Some days arriving just a few days late, to weeks later and some editions not at all.

**20.** The question becomes whether the failure of ADCRR employees to follow the clearly written Department Orders, or to at least show a modicum of concern by those in a position of authority, Director Thornell, Warden J. Martinez and Deputy Warden D. Mendoza, to resolve the issue by changing or modifying the process at the Tucson Complex mailroom, constitutes a willful, knowing and callous indifference in the handling and service of the United States Postal Service (USPS) mailed items to inmates, and their effect of chilling of my First Amendment Rights.

SUPPORTING FACTS.

**21.** For the last 13 years as a prisoner of ADCRR, Plaintiff has enjoyed receiving the Wall Street Journal Newspaper, mostly with out interruption. Florence Complex was efficient for the most part, and on time with their deliveries, mostly delivered the very same day as published. However this last year with the move from Eyman Complex to the Tucsons complex, the service by Tucson Complex Mailroom staff is not consistent with ADCRR's written Department Orders.

As evidenced by the three grievances here (and Count #1 of this 1983 Notice of claim), the Tucson Complex mailroom shows no consistency in its adherence to following well-established policies put forth by ADCRR.

**22.** On December 19th 2024 Plaintiff filed a grievance concerning the handling of the mailed newspapers. Two editions being erroneously delivered to a different inmate on my unit and that of missing papers.(Ex.# 9 informal, grievance )

11 of 21

4-A

4 of 149

23. The response from Francisco Gonzalez said in part that the USPS delivery process for this complex takes approximately three (3) days.  Any mail destined for Tucson is initially routed to Phoenix for processing, where it is then redirected back to Tucson for final delivery, a process which can add an additional two days.( Ex# 10 ADCRR's Responses informal, grievance.)

24. Within Plaintiffs own investigation, by way of family members contacting both the USPS and the Wall Street Journals Arizona printing facility, Plaintiff found that the Newspaper printing facility is located in Phoenix and all papers destined to be delivered by mail go directly to the USPS Phoenix processing center to start with.( see email from J.Westcott to Mrs. A. Oddo general counsel with ADCRR dated December 30th 2024). ( Ex # 11  letter to ADCRR Administration from J. Westcott). This information negates the claim by Mr.Gonzalez that the reason for late materials is due to the USPS run-a-round requiring an additional two days.

25. The second grievance dated December 19th 2024, detailed the untimely delivery of the December 7-8th 2024 weekend edition ( 10 days past the publication ), due to the included WSJ Magazine. (Ex.# 12  Informal, Grievance, Appeal and Second Appeal with ADCRR's responses) This magazine was contraband due to partial nudity, yet ADCRR staff withheld the actual newspaper an additional 5 days beyond publication date. Of note, it was the Magazine and not the paper that was contraband, so 914 mail  policy was not adhered to. ( see Ex # 13 D.O. 914 Inmate Mail and  attached Office of Publication Review , form # 914-6 specifically for the Magazine).

26. On January 2nd 2025 Plaintiff filed yet another informal complaint resolution concerning regular mail and the withheld Wall Street Journal, proposing a viable solution to track the receipt of newspapers. ( Ex # 14  Informal and ADCDR's response )

27. The response from Mr.Gonzalez this time was equally revealing. He states the For Complex mail. "When a truck arrives, its contents are scanned for the following day, but due,  to unforeseen circumstances, the mail isn't always processed immediately." Plaintiff understands that contraband interdiction is paramount to the security of prison operations and that inspections must occur. Mr.Gonzalezs response however claiming unforeseen circumstances prevent staff from performing their duties in accordance with Department Orders is deficient. Unforeseen events surely do not occur every single day.

4-B

12 of 21
10 of 149

**28.** More recently, August 21st 2025, in an attempt to appeal to the new Complex Warden J. Martinez, Plaintiff sent him an email with a brief detail of what has been going on concerning the mail asking him for help in solving this matter. Plaintiff received no response from him. Friday, August 22nd 2025, Plaintiff was called to Administration by C.O. 4 Pulicicchio and told that Plaintiff was forbidden to email staff directly. Department Orders #916 expressly encourages contact with corrections staff to help resolve issues or general information requests. This failure to respond is yet another instance of staff's willful indifference to follow ADCRR's written policies. ( Ex # 15 D.O. 916  3.1)

**29.** August 26th 2025 plaintiff was delivered Wednesday August 20th 2025 WSJ by Property Officer Olmes. ( 7 days late.) This unfortunately is the norm. Plaintiff spoke with Office Olmes and asked that he write an incident report (I.R.) to memorialize the matter for this purpose, yet plaintiff was denied access to this information by ADCRR.

INJURY

**30.** The First Amendment Right to access media and Freedom of the Press is enshrined in the Unites States Supreme Court case Lamont v. Post Master General , 381 U.S. 301 (1965) and is the " exchange of thoughts and ideas." Plaintiffs Rights have been chilled by the actions of ADCRR in denying access to an approved news/media outlet that Plaintiff has willingly paid to have sent to him. In order for the first amendment to be fulfilled, this unenumerated Right must exist. That is, it must be able to be consumed or read by the United States citizens. Plaintiffs criminal case was featured in one article of the Wall Street Journal ( August 4th 2010 ) thus far, and tangential articles provide much needed current background research concerning advancements in medication therapies and the ever changing landscape of criminal law at the Federal level.(Ex. # 16  WSJ ARTICLE ). To say Plaintiff relies on this paper to keep him informed of current events, both personally applicable and world wide would be an understatement.

**31.** Consistently late Newspapers, containing current events, and time sensitive materials become obsolete overnight. The sole reason to subscribe to a daily newspaper is to be informed on a daily basis. Papers that are days and weeks late provide a history lesson. The current subscription to the Wall Street Journal is currently $840 per year at the preferred rate as a long time subscriber. With 280 editions sent each year, excluding

13 OF 21

4 - C

holidays, is $3.00 per issue. It pains the Plaintiff to toss out three dollars every time a paper is days and or weeks old.

**32.** It's not only the First Amendment Right and the financial component we must consider. Tucsons complex mail staff are also implicated in interfering with the final delivery of USPS mail, which under certain circumstances may be considered a Federal offense, should any of the missing papers or included magazines be revealed to have been stolen, or purposely disposed of.

**33.** Director R. Thornell, Tucson Complex Warden Martinez and Rincon D.W. D. Mendoza have displayed a willful and knowing deliberate indifference in their actions, inconsistent with both the written Department Orders and the Constitutional Rights of prisoners under their custody and jurisdiction.

REASON TO GRANT

**34.** Upon the Plaintiff's arrival at the Tucson Complex, he was told by several senior officers that "We do things differently here in Tucson." What that meant was unclear at the time, but a better understanding soon became apparent, as evidenced above. The policy and customs of the Tucson Complex are NOT to follow delineated procedures consistent with ADCRR Department Orders or the First Amendment of the United States Constitution.

Objective and Subjective Indifference.

**35.** Objectively, it is apparent that the Tucson mail room staff, wardens, and deputy wardens are not following ADCRR's written Department Orders. Neither is Director Thornell and the executive staff enforcing written Department Orders to be followed, concerning mail delivery, in both the stated delivery to be within 24 hours, excluding weekends and Holidays, and forcing a significant financial loss to the Plaintiff.

**36.** Subjectively, Mrs. Julie Bowers attempt to dismiss a legitimate Constitutional violation concerning my First Amendment to access approved media must survive.

CONCLUSION

**37.** I respectfully request that the Court award the following relief:

14 of 21

12 of 149

4-D

1)Reimburse plaintiff if for filing fees and other costs incurred to file this suit.

2)Reimburse Plaintiff in the amount of $840 for the newspapers for the calendar year that were late or went completely missing.

3) To encourage ADCRR to adhere to timely delivery, mandate that a new and separate P.O. Box be designated to Death Row only, to ensure a delivery schedule consistent with ADCRR's written policy.

4)Grant any additional injunctive or compensatory relief that is consistent with the egregious violations of the United States Constitutional First Amendment, concerning the Interference With My Access To the Freedom of the press and ADCRRs' deliberate chilling of that right.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

André M. Letevé.                    Date.

11/4/2025

U. E

15 OF 21

13 OF 149

## COUNT III

1.  State the constitutional or other federal civil right that was violated: _EIGHTH AMENDMENT_
.

2.  **Count III.** Identify the issue involved.  Check **only one**.  State additional issues in separate counts.
    - ☐ Basic necessities      ☐ Mail      ☐ Access to the court      ☐ Medical care
    - ☐ Disciplinary proceedings      ☐ Property      ☐ Exercise of religion      ☐ Retaliation
    - ☐ Excessive force by an officer      ☒ Threat to safety      ☐ Other: _____.

3.  **Supporting Facts.**  State as briefly as possible the FACTS supporting Count III.  Describe exactly what **each Defendant** did or did not do that violated your rights.  State the facts clearly in your own words without citing legal authority or arguments.

_SEE ATTACHED PAGES FOR COUNT #3_

4.  **Injury.**  State how you were injured by the actions or inactions of the Defendant(s).

_SEE ATTACHED_

5.  **Administrative Remedies.**
    a.  Are there any administrative remedies (grievance procedures or administrative appeals) available at your institution?    ☒ Yes    ☐ No
    b.  Did you submit a request for administrative relief on Count III?    ☒ Yes    ☐ No
    c.  Did you appeal your request for relief on Count III to the highest level?    ☒ Yes    ☐ No
    d.  If you did not submit or appeal a request for administrative relief at any level, briefly explain why you did not. _____
.

**If you assert more than three Counts, answer the questions listed above for each additional Count on a separate page.**

16 of 21
14 of 149

Count # 3

INTRODUCTION

**38.** The Smoke Detectors, Automatic Fire Alarm and Fire Suppression System within the inmate housing buildings on Rincon 2 ( bldgs 10 and 11) are inoperable. Plaintiff became aware of this at the Town Hall meeting May 5th 2025, from Captain Covarrubis, aka. "El Capitan" directly. He then told Plaintiff that no inmate housing has operational Automatic fire suppression systems within the entire Tucson Complex. He then explained this was mitigated by fire walks conducted by officers, and in case of a fire, the fire extinguisher in the building tower would be used.

**39.** The question becomes whether ADCRRs Director R.Thornell, Tucson Complex Warden J. Martinez and Rincon unit Deputy Warden D. Mendoza have an unquestionable duty to provide adequate fire safety for its inmates under the Eighth Amendment of the United States Constitution.

SUPPORTING FACTS.

**40.** Plaintiff began the internal grievance process on May 22nd 2025 and followed it to its completion on July 18th 2025, without any administrative indication that this was a problem and that the systems would be fixed and maintained in working order sometime in the future. The first and second level responses indicated that this person could not resolve the issue at this level, and to appeal to Administration.

**41.** Administration replied on June 16th 2025, by returning this appeal to the Rincon Unit Assistant Deputy Warden (ADW) Danny Mendoza, who is now the Deputy Warden (DW) of Rincon 1 and 2. He indicate that funding had been allocated to upgrade the alarm and suppression systems, yet there is no estimated completion date, and that the "fire watch procedures will continue as outlined in our agency's Post Orders and General Orders." (Ex # 17 DO 404 3.4. through 3.4.4.1.1.1 ) whenever fire alarm or suppression systems are not fully operational.

**42.** The next appeal was sent to Central Office, and answered (by M.Knabel and Janah Barriers) stating the "Assistant Directors level response is affirmed. "The current procedures are sufficient and consistent with written direction. The evidence does not support your assertion that ADCRR staff are deliberately indifferent to your safety." ( Ex #

5-A

17 of 21

18 Informal, Grievance, First appeal , Second Appeal A -D  ) ( Ex # 19 ADCRR Responses to Grievance, A - D )

INJURY

**43**. This long standing violation is a result of the untimely implementation of repairing / replacing the smoke detectors, automatic alarm and fire suppression system, as far back as 2018 ( Ex # 20 ADOA Capital improvement Recommendations  ADOC Replace Obsolete and unsupported Fire Alarm System FY 2018), and the 2026 ADOA Building Capital Improvement Plan ( Ex # 21  ADCRR p.12 :stating ". . .that projects that are left unfunded will continue to degrade safety, and subject staff and inmates to unnecessary risk.") This continued delay is not a legitimate excuse viewed under the "lack of financing is not a defense to the failure ... to provide minimum constitutional standards in the operation of a ... jail.'" Carty I, 957 F. Supp. at 744-45 (quoting Inmates of Allegheny County Jail v. Wecht, 699 F. Supp. 1137, 1146 (W.D.Pa. 1988)). "While it is the Government's prerogative to lock up criminals and pretrial detainees in prisons, that power carries with it the duty to provide funds for maintaining those prisons in a constitutional manner." This acknowledgment by ADCRR Director R. Thornell, Tucson Complex Warden Martinez and Rincon D.W. D. Mendoza, are causing Plaintiff to experience ongoing and extreme anxiety, stress, insomnia, loss of apatite and bouts of depression.

**44**. These violations are supported by  First, that the fire walks that are supposed to be performed (every 30 minutes) are no substitute for an automatic fire suppression system. That there is no evidence to suggest that these fire walks COMPLY with State and Local Fire Regulations or are compliant with national standards. Nor do they withstand the Eighth Amendments provisions. Additionally, at the August 20th Town Hall meeting , D.W. Danny Mendoza informed Plaintiff that there were 4 fires on the Rincon Unit 1 within the last month. Fires within detention facilities are not infrequent, as evidenced by the October 17th 2025 fire at the Cochise County facility in Bisbee Arizona. Inmates, civilian staff and seven (7) Officers were injured as a result of not maintaining the 40 year old facility. Rincon unit is if a similar age. (Ex.# 22 Article   B. Petersheim Oct. 18th 2025)

5 - B



**45.** Second, due to the chronic under-staffing of ADCRR facilities, ( Ex # 23  Tucson News Sean Mahoney " Under staffing at Arizona State Prisons" ) these walks are not always performed. Because of the repugnant nature of Plaintiffs crime, if an inmate were to set Plaintiff on fire in his cell, it would take 30 minutes for them to discover the attack, and in that time Plaintiff would suffer irreparable harm, if not death.

**46.** Third, Rincon 2, and the Tucson Complex as a whole, lies directly within the flight path of two airports, Tucson International and Davis Monthan Air Force Base. This fact alone presents a sufficiently imminent danger of a tragic event. During any given month, Tucson International and Davis Monthan average 12,600 takeoff and landings that cross over the Tucson Prison Complex, specifically Rincon 2.(Ex #  24  Flight ,and Crash #'s with fatalities.) In 2024, there were 1,417 fatal airplane crashes with 306 fatalities, NOT including lives lost on the ground. (Ex # 25  "Jet Kills One Spares Kids")

**47.** Additionally, the Tucson Fire Department is in the midst of a staffing shortage, that are leading to increased response times and potential safety risks for both the firefighters and the public, including the Tucson Prison Complex. South Tucson's situation is relying on a an agreement with the city of Tucson to handle fire suppression calls due to the loss of reserve firefighters from neighboring districts. There are also recruitment challenges of declining interest in joining the department. (Ex # 26  Fire Dept. staff shortages ).

REASONS TO GRANT.

Objective Deliberate Indifference.

**48.** Plaintiff need not show that a serious injury already occurred in order for a reasonable jury to find a substantial risk of such injury exists. The Ninth Circuit pronouncement that a prisoner need not wait until actual casualties occur in order to obtain relief in connection with substandard fire prevention systems, see Spellman 753 F.2d at 783  see also Helling v. McKinney, 509 U.S. 25, 36 (1983) ( noting that a remedy for unsafe conditions need not wait a tragic event because the Eighth Amendment protects prisoners from sufficiently imminent dangers).

Subjective Deliberate Indifference.

**49.** ADCRR has freely admitted that the smoke detectors, fire alarm and fire suppression system are not operational throughout the Prison. Danny Mendoza, who is now the

5-C

Deputy Warden of Rincon 1 and 2. indicate that funding had been allocated to upgrade the alarm and suppression systems, yet there is no estimated completion date, and that the fire watch procedures will continue as outlined in our agency's Post Orders and General Orders whenever fire alarm or suppression systems are not fully operational. see Hoptowit v. Ray, 682 F.2d 1237,1257 (9th Cir. 1982)( a district court cannot constitutionalize standards of public health institutions by simply ordering that facilities be brought into compliance with them but can consider such standards when determining whether conduct violates the Eighth Amendment.) ADCRR's 7 years long knowledge regarding the risk posed to Plaintiff by the absence of operational Smoke detectors, automatic fire alarm and suppression system is an issue for a jury to determine.

CONCLUSION.

**50**. Plaintiff respectfully request that the Court award the following relief:

1)Reimburse plaintiff if for filing fees and other costs incurred to file this suit.

2)Fix and or replace the Smoke Detectors, Automatic Fire Alarm and Fire Suppression System within the inmate housing buildings on Rincon 2 ( bldgs 10 and 11).

3)Grant additional injunctive and/or compensatory relief with a daily fine which is consistent with the egregious violations of Plaintiff's Eighth Amendment of United States Constitution ( i.e. $1000.00 per day) to ensure compliance is actually completed in a timely manor.


I declare under penalty of perjury that the foregoing is true and correct to, the best of my knowledge.


André M. Leteve.                Date.
                                11/4/2025

5-0

20 OF 21
18 OF 149

## E.   REQUEST FOR RELIEF

State the relief you are seeking:

SEE ATTACHED COUNTS FOR SPECIFIC RELIEF
CONCERNING INDIVIDUAL COUNTS.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on    11/6/2025
                    DATE

_____
SIGNATURE OF PLAINTIFF

_____
(Name and title of paralegal, legal assistant, or
other person who helped prepare this complaint)

_____
(Signature of attorney, if any)

_____
(Attorney's address & telephone number)

## ADDITIONAL PAGES

All questions must be answered concisely in the proper space on the form.   If you need more space, you may attach no more than fifteen additional pages.   But the form must be completely filled in to the extent applicable. If you attach additional pages, be sure to identify which section of the complaint is being continued and number all pages.

6

21 OF 21
19 OF 149