Brian Bergin, #016375
Kevin Kasarjian, #020523
**Bergin, Frakes, Smalley & Oberholtzer, PLLC**
4343 East Camelback Road, Suite 210
Phoenix, Arizona 85018
Telephone: (602) 888-7855
Facsimile: (602) 888-7856
bbergin@bfsolaw.com
kkasarjian@bfsolaw.com
*Attorneys for Defendants*

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Andre Michael Leteve,<br><br>Plaintiff,<br><br>vs.<br><br>Ryan Thornell, et al.,<br><br>Defendants. | Case No.: CV-25-00622-TUC-JGZ<br><br>**DEFENDANT THORNELL'S RESPONSE TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION** |

Defendant Ryan Thornell ("Director Thornell") responds to Plaintiff's "Motion for Narrowly Tailored Preliminary Injunctive Relief Concerning Fire and Life-Safety Conditions in the Event of Transfer" (Doc. 54) (the "Motion").

## I. Background

Plaintiff is an inmate, subject to a death sentence, in the custody of the Arizona Department of Corrections, Rehabilitation, and Reentry ("ADCRR") at Arizona State Prison Complex Tucson ("ASPC-Tucson"), Rincon Unit ("Rincon"). (Doc. 55 ¶ 1.) In Count III of his First Amended Complaint, Plaintiff alleges that smoke detectors, automatic fire alarms, and fire-suppression systems do not operate at Buildings 10 and 11 at Rincon. (Doc. 30 at 16, ¶38.)

According to Plaintiff, Rincon prison officials explained that officers conduct fire walks and have access to a fire extinguisher to mitigate the risk posed by the inoperable

fire-suppression systems. (*Id*.) Plaintiff also asserts that Rincon prison officials advised him that ADCRR had allocated funding for fire-system upgrades and would continue existing fire mitigation procedures pending repairs. (*Id*. at 16, ¶41.) After screening Plaintiff's First Amended Complaint, the Court ordered Director Thornell to answer Count III in his official capacity only. (Doc. 20 at 9.)

In his Motion, Plaintiff asks the Court to require Director Thornell, or an authorized designee, to verify, before ADCRR places him in any receiving housing area, that the applicable fire-detection and automatic fire-alarm systems and any required automatic fire-suppression systems are operational. In addition to that verification, Plaintiff asks the Court to require Director Thornell to file, within 72 hours after Plaintiff has been re-housed, a certification confirming that those systems are operational at Plaintiff's new housing location. (Doc. 54 at 6.) Plaintiff expects these requirements to be in effect for 90 days and asks the Court, before that time expires, to determine whether to make the relief final. (*Id*. at 5-6.)

Plaintiff's characterization of his requested relief as "narrowly tailored" could not be more inaccurate. Plaintiff seeks an order governing any potential future housing location throughout the State of Arizona, although his Count III only concerns the conditions under which he is housed at ASPC-Tucson. He has not shown that a future transfer will expose him to inadequate fire protection or that ADCRR's response to the alleged deficiencies warrants the additional, unprecedented, verification and certification requirements he demands. The Court should deny the Motion.

## II. Preliminary Injunctive Relief Requires a Demanding Standard.

Courts should approach injunctive orders directing the execution of prison operations with caution. *Farmer v. Brennan*, 511 U.S. 825, 846-47 (1994) (in the prison context, "a district court should approach issuance of injunctive orders with the usual caution"); *Pratt v. Rowland*, 65 F.3d 802, 806 (9th Cir. 1995) ("federal courts should be circumspect when asked to intervene in the operation of state prisons."); *Goff v. Harper*,

60 F.3d 518, 520 (8th Cir. 1995); *Streeter v. Hopper*, 618 F.2d 1178, 1181 (5th Cir. 1980). Injunctive relief should, therefore, be issued in the prison context only in extraordinary circumstances. *Fisher v. Goord*, 981 F.Supp. 140, 168 (W.D.N.Y. 1997) (citing *Taylor v. Freeman*, 34 F.3d 266, 268 (4th Cir. 1994)).

"A preliminary injunction is an 'extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion.'" *Lopez v. Brewer*, 680 F.3d 1068, 1072 (9th Cir. 2012) (emphasis in original) (quoting *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997)). "To obtain preliminary injunctive relief, [Plaintiff] must demonstrate that: 1) he is likely to succeed on the merits of such a claim; 2) he is likely to suffer irreparable harm in the absence of preliminary relief; 3) the balance of equities tips in his favor; and 4) that an injunction is in the public interest." *Id*. (citing *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)).

Congress has limited the permissible scope of an order for preliminary relief that may be entered against a prison. Such preliminary relief must be narrowly drawn and represent the least intrusive means to correct the harm. In that regard, the Prison Litigation Reform Act ("PLRA") provides that:

> In any civil action with respect to prison conditions, to the extent otherwise authorized by law, the court may enter a temporary restraining order or an order for preliminary injunctive relief. Preliminary injunctive relief must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct that harm.

18 U.S.C. § 3626(a)(2).

Furthermore, Plaintiff seeks a mandatory injunction requiring Director Thornell to submit specific, individualized, public verification and report to this Court concerning the conditions under which Plaintiff may be moved. The burden for that relief is "doubly demanding" and requires that the "law and facts clearly favor" the moving party. *Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015) (en banc) (affirming denial of a

preliminary injunction requiring affirmative action because plaintiff failed to show that the law and facts clearly favored their position). "The Court shall give substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the preliminary relief and shall respect the principles of comity…." 18 U.S.C. § 3626(a)(2).

Those considerations weigh heavily here. Plaintiff seeks a housing restriction, applicable only to him, that would require ADCRR, before rehousing him, to verify the existence ad operational status of specified fire-safety equipment at the receiving housing area and then also require the Director to certify compliance to the Court within 72 hours. (Doc. 54 at 6.) That obligation and oversight exceeds the Fire Marshal's requirements as to Plaintiff, and Plaintiff alone, and the Department's ability to move and house inmates as needed to ensure the safe operation of the state prison system. (Exhibit 1 at ¶ 4.) Officials making placement decisions for a death-row inmate would have to account, not only for the institutional safety and security concerns prompting the move, but also for a court-imposed condition unique to Plaintiff.

The certification requirement also would place each future movement on the public docket. Plaintiff himself acknowledges that movements of death-sentenced prisoners are conducted under heightened security. (Doc. 51 at 3.) Plaintiff's assurance that the certification may omit "security-sensitive tactical information" does not resolve the issue, because the certification he demands would, itself, disclose "security-sensitive tactical information" like the movement of death-sentenced prisoners. (Doc. 55 ¶¶ 5-6.)

Moreover, the restriction would impede ADCRR's discretion at the very moments when operational flexibility matters most. Plaintiff's proposed order makes no distinction between emergency relocations and planned transfers. (Doc. 54-1.) If an emergency occurred that necessitated Plaintiff's movement, prison officials would still have to complete the fire-safety equipment verification before re-housing Plaintiff. That requirement could delay separating Plaintiff from identified threats and conditions or responding to any of the many other circumstances that could require an emergency

transfer. The resulting risk of such a delay implicates the safety of Plaintiff, other inmates, and prison staff. The PLRA requires the Court to give these adverse effects substantial weight, and they weigh against the relief Plaintiff requests.

**III. Plaintiff Has Not Established the Grounds for Preliminary Injunctive Relief.**

**A. Plaintiff Has Not Established A Nexus Between Count III and the Requested Relief Governing Placements Outside ASPC-Tucson.**

A preliminary injunction must bear a sufficient relationship to the conduct alleged in the complaint and provide relief of the same character as the relief available at the conclusion of the case. *Pacific Radiation Oncology, LLC v. Queen's Medical Center*, 810 F.3d 631, 636 (9th Cir. 2015). Without that relationship, the Court lacks authority to grant the requested relief. *Id*.

Count III is a claim centered on the fire safety systems at ASPC-Tucson. (Doc. 30 at ¶¶ 38-47.) The injunctive relief Plaintiff seeks in Count III is the repair and replacement of the fire safety systems at Rincon, Buildings 10 and 11. (*Id*. at ¶ 50.) Plaintiff's First Amended Complaint contains no allegations concerning fire-safety at any other ADCRR complex, and it does not allege a statewide practice of transferring inmates to unsafe housing.

Nevertheless, the Motion seeks verification and certification requirements that would apply only to Plaintiff and be triggered upon Plaintiff's re-housing at any ADCRR facility, statewide. (Doc. 54 at 6.) Plaintiff argues that the requested relief bears the necessary relationship to Count III because it addresses the same category of fire-safety harm. (*Id*. at 4.) Identifying the same category of harm does not connect or otherwise establish existing conditions at another ADCRR complex to the conditions alleged as ASPC-Tucson. Plaintiff points to no common deficient practice or any facts linking a hypothetical receiving area outside ASPC-Tucson to the alleged fire safety system failures underlying the claims in Count III. His requested relief would, therefore, extend judicial supervision statewide to conditions the Complaint does not challenge. Indeed, an inmate's

transfer generally moots his injunctive claims about the facility he left. *Dilley v. Gunn*, 64 F.3d 1365, 1368-69 (9th Cir. 1995).

The Court should deny the Motion because Plaintiff has not established a sufficient relationship between the relief he requests and the conduct alleged in Count III.

**B. <u>Plaintiff Has Not Shown He Is Likely to Suffer Irreparable Harm.</u>**

Plaintiff has not shown that he faces a likely threat of irreparable harm absent the preliminary relief he seeks. As a threshold matter, ADCRR has no pending or imminent plans to transfer Plaintiff. (Exhibit 1 at ¶ 3.) Moreover, Plaintiff offers no facts showing that ADCRR likely will place him in housing with inadequate fire protection. Plaintiff's Declaration expresses concern about a future placement without operational automatic systems, but identifies no anticipated placement or the conditions that would exist there. (Doc. 55 ¶¶ 8-10.) An injunction cannot rest on speculation that Plaintiff *might* encounter unsafe conditions if ADCRR transfers him. *Caribbean Marine Services Co. v. Baldrige*, 844 F.2d 668, 674 (9th Cir. 1988) ("Speculative injury does not constitute irreparable injury sufficient to warrant granting a preliminary injunction").

Plaintiff argues that waiting for notice of a specific transfer would leave him insufficient time to seek relief. (Doc. 54 at 3.) He relies on his November 2024 transfer to Rincon, when he did not receive enough advance information to challenge the conditions before the move, as the basis for his argument. (Doc. 55 ¶¶ 3-5.) That experience does not establish that another transfer is likely or that its destination would lack adequate fire protection systems. To the contrary, no transfer of Plaintiff is pending or imminent. (Exhibit 1 at ¶ 3.) The possibility that Plaintiff would not receive notice of a future transfer does not establish a present need for the relief he seeks in his Motion.[1]

Nor has Plaintiff shown that a transfer to another housing placement would expose him to the allegedly inadequate fire protections he challenges at Rincon. Plaintiff identifies

[1] The implicit suggestion that Plaintiff or any other inmate should be given notice before being transferred raises a host of independent security concerns.

no destination, no defective equipment, and no facts showing that existing protective measures or remedial efforts would leave him exposed to likely irreparable harm.

Plaintiff emphasizes that fire and smoke inhalation can cause injuries that money damages cannot repair. (Doc. 54 at 4-5.) Plaintiff accurately states the possible health effects from fire exposure, but the seriousness of those injuries does not establish that a future transfer will expose Plaintiff to a likely risk of suffering them. *Winter* requires *likely* irreparable injury, not merely a possibility. *Winter*, 555 U.S. at 22. Plaintiff's concerns about conditions at an undefined, speculative, future placement do not meet that requirement. The Court should therefore deny the Motion.

**C. <u>Plaintiff Has Not Shown a Likelihood of Success on the Merits.</u>**

To establish a likelihood of success on his Eighth Amendment claim, Plaintiff must show that he faces a substantial risk of serious harm and that Director Thornell has acted with deliberate indifference to that risk. *Farmer*, 511 U.S. at 834, 837. Officials who respond reasonably to a known risk do not violate the Eighth Amendment, even if their response does not ultimately prevent harm. *Id*. at 844-45. For prospective relief, the Court must consider officials' current conduct and whether an unreasonable disregard of the risk will continue. *Id*. at 845.

Plaintiff's argument focuses on impaired automatic fire detection and suppression equipment, and the timing of any repairs or upgrades. The constitutional inquiry, however, also requires the Court to consider the actions and response of ADCRR. *Farmer*, 511 U.S. at 844. Plaintiff acknowledges that officials have instituted a mandatory 30 minute fire walk protocol, have access to fire extinguishers, and advised him that ADCRR has been allocated funding for upgrades to the existing fire-safety systems where Plaintiff is housed. (Doc. 30 at 16-17, ¶¶ 38, 41-42.) ADCRR has responded to any equipment impairments by instituting and requiring reasonable and effective interim measures to protect inmates while ADCRR pursues repairs of the impaired systems. (Exhibit 2 at ¶¶ 3, 5.)

Post Order 35 requires an immediate fire watch when fire alarms, devices, or suppression systems do not work. The watch must continue "the half hour of every hour" until the defective system or components return to operation. (Exhibit 4, Post Order 35 § 6.2.2.) Officers assigned to the watch must carry radios that connect them to Main Control, remain vigilant for fire or smoke, identify its location, initiate ICS, request resources, and notify the jurisdictional fire department of an emergency. (*Id.* §§ 6.2.3–6.2.8.) Officers must document an "all clear" when appropriate, and the watch cannot end without system restoration and Occupational Safety Consultant approval. (*Id.* §§ 6.3–6.4.)

The order also requires daily checks of fire-safety equipment and extinguishers, electrical inspections at least once per shift, and continuing safety and hazard checks. Officers must ensure that exits remain clear, evacuation routes are posted, and personnel know those routes. (*Id.* §§ 6.1–6.1.6.) ADCRR's procedures thus address detection, initial response, and evacuation while officials pursue repairs.

ADCRR has employed those requirements at Rincon through fire walks every 30 minutes, radio communications with Main Control, available fire extinguishers, and procedures for notifying the fire department and evacuating inmates. (Exhibit 2 at ¶ 3.) These measures provide means to detect fires, summon assistance, and protect inmates during an equipment outage. Moreover, the Fire Marshal has inspected Rincon, reviewed the impaired systems and ADCRR's interim procedures, and approved those procedures as adequate protection pending repairs. (Exhibit 2 at ¶ 4.) That assessment supports the reasonableness of ADCRR's response to the conditions Plaintiff challenges.

Plaintiff also cites the length of the equipment outage. (Doc. 54 at 2-3.) ADCRR has been allocated over $12,835,000 for repairs to the fire safety equipment at ASPC-Tucson. (Exhibit 3 at ¶ 3.) Public bidding for the repairs and improvements is set to commence in November 2026. (*Id*. at ¶ 5.) The repairs and improvements to the fire safety equipment at ASPC-Tucson are anticipated to be completed between six to nine months following the conclusion of the public bidding process. (*Id*. at ¶ 6.) In the meantime,

ADCRR has maintained the protective measures established in Post Order 35. Those measures, the Fire Marshal's approval, and the funded repairs show an ongoing reasonable response to both the impaired equipment and the risk it presents.

The record shows an affirmative and reasonable response to the fire safety deficiencies alleged in Count III. Plaintiff has not shown that these measures leave him exposed to a substantial risk that Director Thornell knowingly disregards. He therefore has not established a likelihood of success on the merits of this Eighth Amendment claim. Nor has he shown that the law and facts clearly favor the mandatory verification and certification requirements he requests.

**D. Plaintiff Has Not Shown That the Balance of Equities or Public Interest Favors Granting Relief.**

To obtain preliminary injunctive relief, Plaintiff must establish that the balance of equities tips in his favor and that an injunction serves the public interest. *Winter*, 555 U.S. at 20. When the government is the opposing party, the balance-of-equities and public-interest factors merge. *Nken v. Holder*, 556 U.S. 418, 435 (2009); *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014). Plaintiff has not shown that the protective benefit of the requested order warrants its additional placement and reporting requirements.

ADCRR must retain flexibility to move and house inmates based on safety, security classifications, healthcare needs, available housing, and disciplinary concerns. (Exhibit 1 at ¶ 4.) Plaintiff argues that his proposed order imposes little burden because it permits transfers, requires no advance disclosure of security information, and leaves the method of verification to ADCRR. (Doc. 54 at 3, 5.) But the order would still impose an additional prerequisite to placement and require Director Thornell to report compliance after each move. Even accepting Plaintiff's characterization of the burden as limited, he must show why the threatened harm warrants those additional obligations. No transfer is pending or imminent, and Plaintiff identifies no receiving area with inadequate fire protection. He has not demonstrated a protective benefit that justifies imposing those requirements now.

The public has an interest in both safe prison conditions and effective prison administration. ADCRR has implemented interim fire-safety measures at Rincon that the Fire Marshal has approved while repairs remain pending. (Exhibit 2 at ¶ 4.) Plaintiff has not shown that his proposed requirements would remedy a deficiency in those protections or prevent likely harm at a future placement. His interest in adequate fire protection does not, without that showing, establish a need for court-imposed conditions on Plaintiff's future placements. On the existing record, he has not established that the balance of equities or public interest favors the requested injunctive relief.

**E. The Requested Relief Also Fails to Satisfy the PLRA**

The PLRA requires preliminary relief to be narrowly drawn, extend no further than necessary to correct the harm requiring relief, and provide the least intrusive means of correcting that harm. 18 U.S.C. § 3626(a)(2). Plaintiff has not established a need for either the preplacement verification or the subsequent certification he requests.

Even assuming the requested relief bears a sufficient relationship to Count III, Plaintiff must establish why each requirement is necessary. He argues that verification would merely confirm compliance with existing fire-safety obligations through ADCRR's own procedures. (Doc. 54 at 5.) But an existing obligation to inspect and maintain equipment does not itself establish a need for a court-ordered verification before Plaintiff enters a receiving housing area. Plaintiff identifies no planned placement, deficient inspection at a receiving housing area, or other facts showing that the additional procedure would correct a harm requiring preliminary relief.

The proposed order also would make verification of operational automatic systems a prerequisite to Plaintiff's placement. (*Id.* at 6.) ADCRR's response at Rincon includes interim fire watches and emergency procedures that the Fire Marshal has approved pending repairs. (Exhibit 2 at ¶ 4.) Plaintiff nevertheless requests an equipment-based placement condition without identifying a receiving housing area or showing why its actual

safeguards would be inadequate. He has not established that this condition is necessary to correct a harm requiring preliminary relief.

The individualized certification requirement also would inject judicial oversight without a demonstrated need. Director Thornell would have to file a certification within 72 hours after Plaintiff is received at a different facility, requiring continuing judicial monitoring of compliance after each time Plaintiff may be transferred. (Doc. 54 at 6.) The Supreme Court has cautioned against judicial involvement that leaves courts "enmeshed in the minutiae of prison operations." *Lewis v. Casey*, 518 U.S. 343, 362 (1996) (quoting *Bell v. Wolfish*, 441 U.S. 520, 562 (1979)). Although the certification would document compliance with the proposed order, Plaintiff has not shown why protecting against his specific fears requires the requested individualized reporting obligation or why existing safeguards cannot adequately address the alleged risk without it. The requested oversight, therefore, exceeds any need Plaintiff can demonstrate.

Plaintiff's proposed 90-day duration does not cure these deficiencies. It limits the initial order's duration but does not establish that either requirement is necessary or provides the least intrusive means of correcting an identified harm. The requested relief therefore fails to satisfy the PLRA.

**IV. Conclusion**

For these reasons, Director Thornell requests that the Court deny Plaintiff's Motion (Doc. 54).

DATED this 14th day of October, 2026.

By: <u>*/s/ Brian Bergin*</u>
Brian Bergin
Kevin Kasarjian
4343 East Camelback Road, Suite 210
Phoenix, AZ 85018
*Attorneys for Defendant*

**CERTIFICATE OF SERVICE**

I hereby certify that on October 14, 2026, I electronically transmitted the foregoing document to the Clerk's Office using the CM/ECF system for filing, which will provide a Notice of Electronic Filing to all CM/ECF registrants.

I further certify that, on this same date, the foregoing document and a Notice of Electronic Filing were served by mail to the following, who is not a registered participant of the CM/ECF system:

Arizona Department of Corrections, Rehabilitation & Reentry
Andre M. Leteve, #277278
ASPC/Tucson/Rincon D/Row
801 E Jefferson St
Phoenix, AZ 85034

By: *<u>/s/ Shelly Hilton</u>*